

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

CURTIS TAYLOR,                          )
                                        )
                    Appellant,          )
                                        )
                                        )   WD78931
v.                                      )
                                        )
                                        )   OPINION FILED:
                                        )   May 10, 2016
DIVISION OF EMPLOYMENT                  )
SECURITY,                               )
                                        )
                    Respondent.         )

**Appeal from the Labor and Industrial Relations Commission**

**Before Division IV:** Alok Ahuja, Chief Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Mr. Curtis Taylor ("Claimant") appeals from an order of the Labor and Industrial Relations Commission ("Commission"), which affirmed and adopted the decision of the Appeals Tribunal ("Appeals Tribunal") of the Division of Employment Security ("Division") dismissing Claimant's appeal of the denial of unemployment benefits for failure to show good cause to excuse his failure to participate in a telephone hearing scheduled before the Appeals Tribunal. We reverse the Commission's decision and remand for a decision on the merits.

## Factual and Procedural Background[1]

Claimant was employed on January 8, 2013, at First Transit, Inc. ("Employer"), working in bus maintenance as a "Technician I." He was discharged by Employer on February 27, 2015, for continuing performance issues and lack of required certifications. Claimant filed a claim for unemployment benefits, which Employer protested. A Division deputy determined that Claimant was disqualified from receiving unemployment benefits for leaving work voluntarily without good cause attributable to his work or employer.

Claimant appealed the deputy's determination. The Division notified Claimant by mail that he was scheduled for a telephone hearing on April 2, 2015, at 12:30 p.m. The notification letter also provided Claimant with a specific telephone number and access code to use for obtaining access to the telephone hearing ("conference bridge"). On April 2, 2015, by 12:35 p.m., Claimant had failed to successfully connect to the telephone hearing via the conference bridge. Consequently, the Appeals Tribunal referee dismissed the appeal.

On April 12, 2015, Claimant appealed the dismissal, alleging that he called the telephone number provided at 12:30 p.m. on April 2, but before he could connect to the conference bridge, his cellular phone lost the connection and the call was dropped. He stated that he then called back multiple times, ultimately contacting the Appeals Tribunal referee at 12:52 p.m., and was informed that the hearing was closed and his claim dismissed.

The Appeals Tribunal set the dismissal aside and ordered a new hearing to consider whether Claimant had good cause for failing to participate in the April 2 hearing and to take evidence on the merits of his case. On June 9, 2015, the Appeals Tribunal heard the appeal by

---

[1] In reviewing unemployment compensation cases, we view the facts objectively, not in the light most favorable to the Commission's decision. *Lucido v. Div. of Emp't Sec.*, 441 S.W.3d 172, 174 (Mo. App. W.D. 2014) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). However, we defer to the Commission's determination on matters of witness credibility. *Id.* (citing *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 79 (Mo. banc 2014)). We review *de novo* conclusions of law and the application of the law to the facts. *Id.*

means of a telephone conference at which Claimant and Employer testified. On June 15, 2015, the Appeals Tribunal referee determined that Claimant had not shown good cause for failing to appear and participate in the April 2 hearing and reinstated the dismissal order.

Claimant filed an application to have the Appeals Tribunal's decision reviewed by the Commission. The Commission affirmed the Appeals Tribunal's decision and adopted its decision as the decision of the Commission.

Claimant timely appealed to this court.

**Standard of Review**

Article V, section 18 of the Missouri Constitution provides for judicial review of the Commission's decision to determine if it is authorized by law and is "supported by competent and substantial evidence upon the whole record." *See Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). When we review a Commission order, "[t]he findings of the [C]ommission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." § 288.210.[2] When, as here, the Commission adopts the decision of the Appeals Tribunal, we consider the Appeals Tribunal's decision to be the Commission's for purposes of our review. *Gunn v. Div. of Emp't Sec.*, 423 S.W.3d 820, 821-22 (Mo. App. W.D. 2014).

In reviewing the Commission's decision refusing to set aside the dismissal for failure to show good cause, we determine whether the Commission abused its discretion. *Stevenson v. Div. of Emp't Sec.*, 359 S.W.3d 91, 93 (Mo. App. W.D. 2011). *See also* § 288.210. The employment security law is to be "liberally construed to accomplish its purpose to promote

_____

[2] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

3

employment security . . . by providing for the payment of compensation to individuals in respect to their unemployment." § 288.020.2.

## Analysis

### Point I

In Claimant's first point on appeal, he argues that the Commission erred in dismissing his appeal because he had good cause for being unable to connect to the conference bridge for his April 2nd telephone conference hearing at the designated time in his notification of hearing. Claimant points out that he called at the designated time of 12:30 p.m. but, due to intermittent cellular coverage, his cellular phone dropped his phone call at 12:30 p.m. However, after additional attempts, he was able to successfully communicate with the Appeals Tribunal within approximately twenty minutes.

A claimant's appeal from a deputy's ruling may be dismissed for failure to appear. § 288.190.3; 8 CSR 10-5.040(2)(A).[3] "Appear" means that the participants "[j]oin the telephone conference as instructed on the notice of hearing at the time of the hearing." 8 CSR 10-5.010(2)(B).2. Upon a claimant's written request, a hearing officer may set aside an order of dismissal and have the appeal reset for hearing. 8 CSR 10-5.040(3)(C). If the dismissal is set aside, a hearing shall be scheduled to determine as a threshold issue whether claimant had good cause for failing to appear at the prior hearing. 8 CSR 10-5.040(2)(B). "Good cause" is defined as "those circumstances in which the party acted in good faith and reasonably under all the circumstances." 8 CSR 10-5.010(2)(C). If good cause is not found, the hearing officer shall reinstate the order of dismissal. 8 CSR 10-5.040(2)(B).

In its ruling, the Commission identifies three reasons for its conclusion that Claimant failed to act in good faith and reasonably under all the circumstances: (1) Claimant chose to use

---

[3] All regulatory references are to the Missouri Code of State Regulations (October 31, 2013).

a cellular phone and in a location with intermittent cellular coverage; (2) After Claimant's first phone call at 12:30 p.m. was dropped, Claimant "did not immediately dial the telephone number again" to join the conference bridge;[4] and, (3) "At the same time as the hearing, the claimant chose to be responsible for a young child."

Of import, we note that we have previously concluded that "good cause may still be shown for failing to appear when circumstances show claimant's 'affirmative efforts' to do so." *Speed v. Div. of Emp't Sec.*, 402 S.W.3d 153, 155 (Mo. App. W.D. 2013). Cases in which we have affirmed the Commission's decision that a claimant failed to show good cause "generally showed *no attempt by the claimant to be present at the hearing—no affirmative effort to appear*." *Id.* (emphasis added). As we explain in our ruling today, the record reflects circumstances indicating that Claimant made affirmative efforts to appear at his telephone appeal hearing.

Of equal import, we note that we have also previously declared that the Division abuses its discretion when it chooses to conduct proceedings with operating procedures that are outside of the clearly delineated parameters of its own regulations. *See Wilson v. Div. of Emp't Sec.*, 359 S.W.3d 133, 136 (Mo. App. W.D. 2012). In large part, this is the central problem with the proceedings below—that the Division and its Appeals Tribunal are, in practice, implementing internal operating rules that have not been formally promulgated, published to claimants, nor adopted as regulatory operating procedures.

---

[4] "[W]e note that the method by which a claimant appears at a telephone hearing has changed." *Speed v. Div. of Emp't Sec.*, 402 S.W.3d 153, 155 (Mo. App. W.D. 2013). "Previously, a claimant appeared for a telephone hearing by ensuring that the referee had his or her proper phone number and by being available to receive the call from the referee at the appointed time." *Id.* "Now the claimant is required to call in to a designated conference line at an appointed time and follow a recorded prompt." *Id.* "However, the definition of good cause for appearing has not changed, so the precedent finding good cause shown under the previous method remains applicable." *Id.*

*Cellular Phones*

In its ruling, the Commission criticized Claimant for using a cellular phone for participation in the telephone hearing and concluded that Claimant "freely picked an undependable cellular location at his peril," and his choice of such a location was unreasonable. However, none of the Division's regulations, including the regulation for telephone hearings (8 CSR 10-5.030), specifically prohibits the use of cellular phones. Similarly, the Eastern District of this Court recognized as much—that there is neither a statute nor a regulation that prohibits the use of cellular phones in these instances. *Brooks v. Michael G. Correale Dentists*, *LLC*, 87 S.W.3d 890, 892 (Mo. App. E.D. 2002).[5]

That said, in practice, it is clear that the Division is penalizing claimants should they choose to use a cellular phone and have technical difficulty. For example, the Division's website contains the following cellular phone statement that is not found within any Division regulations (nor are claimants receiving notices of appeal directing them to this website warning):

> Use of a cell phone is discouraged. You should not use a cell phone, speakerphone, or cordless phone unless you absolutely have no other choice. If during the hearing, the cell phone or battery-powered telephone you have chosen to use fails, due to location, power failure, or any other reason, that will be the end

---

[5] The reality of today's telecommunication environment is that our society is moving away from land line usage and moving toward more and more dependence upon cellular phones. Twenty years ago, it was relatively rare for anyone to use a cellular phone to make a *phone call* and—for those that possessed such telecommunication technology—the phone was a rather bulky item to consider toting around. Today, it seems that every man, woman, and child reaching their teen years is utterly dependent upon cellular phones that fit in your pocket and are used for phone calls, text messages, photographs, calendars, Facebook, Instagram, Twitter, Netflix, live television streams, and other internet services too numerous to list in this appellate opinion. As we speak, telecommunication companies have also developed watches that can perform all of these functions. Who knows what the telecommunication landscape will look like twenty years from now?

What we do know is that telecommunication companies advertise heavily in print, radio, and television media about the advancements of telecommunication technology, boasting of better and better cellular coverage areas because of more and more cellular phone towers being constructed to connect the cellular phone network coverage areas. One telecommunication company depicts a person locating himself in what would appear to be desolate locations and, of course, possessing perfect cellular phone coverage. While it may be a bit of puffery, consumers are educated by these commercials to trust their telecommunication providers that the days of intermittent coverage and "dropped calls" are—or soon will be—a thing of the past. And yet, cellular phone calls get dropped in places one might least suspect and are not dropped in other places that seem less "metropolitan."

of your testimony. You will not be recalled for the hearing, a continuance will not be granted, and any testimony lost due to that failure will not be considered.

http://labor.mo.gov/DES/Appeals/hearing_info#telephone_conf. We find it no coincidence that, in practice, this is precisely the manner in which the Commission has evaluated Claimant's "good cause" (or lack thereof) in the instant case. In so doing, the Commission is basing its ruling upon internal rules that plainly are not within the boundary of Division regulations.

Here, Claimant testified that his cellular phone was charged, in working condition in anticipation of the April 2 hearing, and he initiated his phone call to the conference bridge at the time designated in his notification of hearing,[6] and he did so in a cellular coverage area that was included within his phone plan. However, before he could be connected into the conference bridge, his cellular call was dropped. After addressing an immediate need for a young child he was caring for, but within approximately twenty minutes and in the same cellular coverage area, Claimant successfully connected with the conference bridge and the Appeals Tribunal referee (only to be told that his claim had been dismissed).[7]

This record shows that Claimant was ready, willing, and able to participate in the April 2 hearing, and he made an affirmative effort to appear at the time he was instructed to do so. Claimant's actions do not evince inappropriate conduct or indifference to the need to participate in a telephone hearing at the time designated for doing so. Hence, the Commission abused its discretion in refusing to set aside the dismissal on the grounds that Claimant used a cellular phone to participate in the hearing where that cellular phone briefly experienced technical difficulties.

---

[6] Had Claimant simply, without excuse, not attempted to initially participate in the telephone hearing at the time he was instructed to telephone the Division, our ruling would likely be different.

[7] Thus, the evidence established that the area from which Claimant initiated his cellular phone call was, in fact, capable of successfully completing such a cellular phone call.

7

### *Immediate Redial*

In its ruling, the Commission next concluded that, while Claimant may have called into the conference bridge at the designated time in the notice of hearing provided to him, after his cellular phone call was dropped, he should have "*immediately*" redialed and established connection with the appeals tribunal and Claimant's failure to do so evidenced an inability of Claimant to establish that he acted in good faith and reasonably under all the circumstances.

Thus, the Division and Commission appear to be operating under the "unwritten rule" that if a claimant has experienced temporary technical difficulties with their phone in achieving a successful connection to the conference bridge at the specifically designated hearing time, a failure on the part of the claimant to "*immediately*" redial and successfully connect to the conference bridge is grounds for dismissal.[8] However, claimants are *not* notified of this "immediate" redial grace period (or lack thereof) in the notification of hearing sent to claimants and there is no similar limitation in the Division's regulations.[9]

Instead, on the reverse side of the notification of hearing document that was sent to Claimant, there is a "Problems" paragraph including the following language: "If *you* have any problems, *or* if you have waited on hold more than 15 minutes and the *referee* (Host) has not joined the call, please contact the referee's office at the telephone number listed on the bottom front of this page." (Emphasis added.) Thus, Claimant was notified that the Division recognizes that "problems" may arise in the telephone hearing process, *both* from *Claimant's* end *and* from the *hearing referee's* end. And, with regard to the hearing referee's end, it contemplates

---

[8] In this case, the record reflects that Claimant's scheduled telephone hearing time was at 12:30 p.m., and the appeals hearing referee dismissed the appeal at 12:35 p.m.

[9] In fact, this court has reversed dismissals by the Commission where the claimant called in to the telephone hearing conference call ten minutes before the designated hearing time, *Speed*, 402 S.W.3d at 156, and fifteen minutes after the designated hearing time, *Wilson v. Div. of Emp't Sec.*, 359 S.W.3d 133, 136 (Mo. App. W.D. 2012).

technical difficulties that could result in a delay of "more than 15 minutes" and contemplates another phone call to establish the connection between a claimant and the hearing referee in that instance. Thus, while the notification sent by the Division to Claimant in this proceeding openly contemplates technical difficulties from the Appeals Tribunal that may lead to a "reasonable" delay in the hearing of "more than 15 minutes," the Commission has concluded that a technical difficulty from the Claimant's end that is in roughly the same time range is "unreasonable." To state the Commission's position is to recognize its inequity.

"[I]t is proper for the Division to accommodate the public when reasonable because the technological system can be difficult to navigate at times" and the "unemployment law should be construed liberally." *Speed*, 402 S.W.3d at 156 n.2. Here, the Division has communicated to Claimant that a delay of "more than 15 minutes" caused by the Division's telephone system is a reasonable delay for the "problem" caused on its end of the telephone hearing, but it refuses to extend a similar reasonable "grace period" to Claimant. Instead, the Division has implemented an "unwritten policy" outside of its regulatory authority to conclude that claimants should only be entitled to an "immediate" time frame to successfully redial the conference bridge as a "reasonable" delay. There is nothing "liberal" about this "construction" and, lacking in regulatory authority and notification to Claimant about time limitations for participating in the telephone appeal, the Commission's reliance upon its unwritten "immediate" telephone hearing appearance rule was an abuse of discretion.

### *Presence of Young Child with Claimant During Telephone Hearing*

Finally, the Commission's last basis for concluding that Claimant failed to act in good faith and reasonably under all the circumstances was that, "at the same time as the hearing, the claimant chose to be responsible for a young child." Aside from the fact that, again, there is no

regulation prohibiting an adult from caring for a young child while participating in a telephone appeal hearing, this court has previously spoken on this topic.

In *Stevenson*, we expressly noted that the presence of a young child for whom the claimant is caring for at the time of the telephone appeal hearing "does not evince inappropriate conduct or indifference to the need to be available for a telephone hearing." 359 S.W.3d at 94. Here, in the span of approximately twenty minutes: Claimant initiated a phone call at the designated hearing time only to have the call dropped; Claimant addressed an immediate need of a young child (Claimant explained that he was dealing with "a little boy running through here. I was getting him situated[.]"); then, Claimant successfully redialed the telephone conference bridge. We conclude that these circumstances do not evince inappropriate conduct or indifference by Claimant. The Commission's conclusion to the contrary was an abuse of discretion.

Point I is granted.

## Point II

In Claimant's second point, he asserts that the Commission erred in failing to address the merits of the case. Claimant asks this court to either remand the case for a hearing on the merits or render judgment on the merits. "On appeal, this Court may address only those issues determined by the Commission and may not consider any issues that were not before the Commission." *Peavy v. Div. of Emp't Sec.*, 440 S.W.3d 569, 571 (Mo. App. W.D. 2014) (internal quotation omitted). "The Commission's decision did not address the merits, but instead addressed [Claimant's] failure to appear." *Id.* "Because under all of the circumstances [Claimant] acted in good faith and reasonably, the Commission abused its discretion in refusing

10

to set aside the dismissal." *Stevenson*, 359 S.W.3d at 96. Accordingly, we reverse the Commission's decision and remand for a decision on the merits.

Point II is granted.

## Conclusion

The Commission's decision is reversed and remanded for a decision on the merits of Claimant's claim for unemployment benefits.

_____
Mark D. Pfeiffer, Judge

Alok Ahuja, Chief Judge, and
Karen King Mitchell, Judge, concur.