

# In the
# Missouri Court of Appeals
# Western District

**TIMOTHY W. JOHNES,**
         **Appellant,**

                  **WD85570**
                **OPINION FILED:**
                **May 23, 2023**

**v.**

**DIVISION OF EMPLOYMENT SECURITY,**
         **Respondent.**

**Appeal from The Labor and Industrial Relations Commission**

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge,
Thomas N. Chapman, Judge

Timothy W. Johnes ("Johnes") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying his appeal of prior decisions finding that Johnes had been improperly paid $4,200 in Federal Pandemic Unemployment Compensation ("FPUC") and $4,480 in State employment benefits because Johnes was disqualified from receiving benefits in that he was unavailable for work during the relevant

period. Finding insufficient evidence in the whole record to warrant the Commission's decision, we reverse and remand for the Commission to hear Johnes's claim on the merits.

## Factual and Procedural Background

The facts essentially are not at issue in this case, and the procedural history is quite complicated and tortured. Johnes was laid off by his employer, Genesis Environmental Solutions, Inc. ("Genesis"), on December 27, 2020. Coincidentally, the day before he was laid off, Johnes was injured at work; he cut his face and received treatment for his face and some physical therapy for his shoulder pursuant to the Workers Compensation Law. During this time, Johnes was cleared to return to work; Genesis did not contest his claim for unemployment benefits, and a representative of Genesis and its workers compensation insurer later submitted a letter to the Division of Employment Security ("Division") confirming that Johnes "was not paid any temporary total disability benefits under Workers' Compensation while he was off work or while he was receiving unemployment benefits." Nevertheless, the Division determined that Johnes was ineligible for benefits from "12/27/2020 to 09/09/9999" because he was "not available for work." The reason listed was because "The claimant has an *open* worker's compensation claim." (Emphasis added).

Johnes appealed, and the Division's Appeals Tribunal sent Johnes two separate notices for telephone hearing. The notices, distinctly formatted, appeared nearly identical; they both provided for hearings on Friday, November 12, 2021, with Referee Austin Fullerton, and one stated the issue for the hearing was "288.380, RSMo: Is the claimant overpaid benefits because the claimant was paid benefits during a period of disqualification?" The other stated the issue for the hearing was "288.380, RSMo: Is the

2

claimant overpaid benefits?" Johnes believed that he had been sent two notices for the same hearing, apparently not noticing that one hearing was at 9:00 a.m., and the other was for 10:00 a.m. Johnes called in at 10:00 a.m., and spoke with the Referee who questioned him solely about the amount he had received in FPUC benefits. During this hearing, Johnes asked the Referee, "I got two, two notices. Uh, and one was for nine o'clock this m[] I didn't notice that, um, with a different appeal number, just one number before this number. I don't know why." Both the hearing set for 9 a.m. and the hearing set for 10 a.m. on that day were before Referee Fullerton, however, Referee Fullerton would not hear or consider Johnes's testimony on why he was not ineligible for benefits, stating "These hearing on the overpayments are pretty simple. We just need to determine whether or not you received the payments." The following exchange occurred regarding the two separate hearings:

> Fullerton: Yes. Those are two separate hearings over two separate issues. Um, if you didn't show up for the 9 AM, they probably filed a nonappearance form, uh, in which case you're gonna have to call the division and see if they can maybe reschedule it or they might require another hearing for a notice, uh, for good cause not to appear, but the 9 AM would have been a separate issue.

> Johnes: Okay. I didn't know that. I just thought I got two copies. And I just looked at the one that said 10 o'clock, and that's when I called. So I made a mistake. I did I thought these were just two copies of the same thing.

> Fullerton: I understand. Yes, Um, I would, I'd recommend after this hearing and calling the division main number and just like explaining to them until they'll either rescheduled [sic] or they might need you to, uh, fill out an appeal for explaining your reason for not showing, but, uh, that, but so that's what I would recommend, but we'll proceed with this hearing now.

On November 16, 2021, Johnes was mailed another Notice of Telephone Hearing, scheduling a hearing for Wednesday, December 1, 2021. The issue for this hearing is stated

3

as, "288.040.1(2), RSMo: Was the claimant able to work, available for work and, if required, actively and earnestly seeking work?" Despite the Division having scheduled another hearing, Johnes's appeal was dismissed prior to the scheduled hearing, on November 22, 2021, because he "did not participate in the hearing to pursue this appeal." Referee Amanda Purvis reportedly conducted "a review of the entire record," which included Referee Fullerton's records.

On December 1, 2021, the date of the rescheduled hearing, Johnes attempted several times to call in for the hearing, but "[o]n each attempt [Johnes] received a recording telling [him] the pin number was not recognized" presumably because Referee Purvis dismissed his appeal the week prior to the scheduled hearing. Johnes notified the Division, and was told this would be noted in his account and he would receive an opportunity to reschedule; on December 31, 2021, not having been contacted to reschedule as promised, Johnes wrote a letter to the Division documenting his trouble accessing the telephone hearing system and requesting another hearing. Meanwhile, on December 27, 2021, the Appeals Tribunal issued an order again dismissing Johnes's appeal for his failure to attend the December 1 hearing.[1]

Another hearing was scheduled for January 3, 2022, but Johnes was late calling for that hearing because it was his first day on his new job, and he could not get away in time to call in; when he called in ten minutes late, his pin number was invalid. Johnes wrote a letter to the Division explaining this on January 3. Johnes's appeal was dismissed on

---

[1] The Division's brief, on page 7, references this as December 27, 2022, which appears to be in error.

4

January 7, 2022, for failure to appear at the hearing. However, another hearing was scheduled for March 15, 2022.[2] On March 15, Johnes represents to this Court that he was again unable to access the telephone hearing system with his PIN number.[3] Despite Johnes having immediately called and reported his trouble accessing his hearing to the Missouri Department of Labor, on March 15, 2022, Johnes's appeal was once again dismissed for failure to participate in his telephone hearing. Johnes timely appealed the decision of the Commission, and the Commission affirmed the decision of the Appeals Tribunal in an order dated June 7, 2022. Johnes's notice of appeal was lost internally within the Division, although Johnes sent his notice to the address indicated. The Division ultimately forwarded the Notice of Appeal to the Commission on July 18, 2022.

### Standard of Review

The decision of the Commission may be modified, reversed, remanded for a rehearing, or set aside by this Court if: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there is not sufficient evidence in the whole record to warrant the making of the award. Section 288.210.[4] In determining whether sufficient,

---

[2] Sometime during this process, "there was an error processing [Johnes's] appeal," and the Appeals Tribunal notified the parties that another hearing would be scheduled. It is unclear whether the hearing referenced in this order is the same hearing that was ultimately scheduled for March 15, 2022.

[3] There is no record of this in the legal file. Johnes, who appears *pro se*, represents to the Court in his appellate brief that the "passcode did not work again, and I immediately called the MDL, and it was documented in my file. I checked on these 3 days later just to ensure that the information was in the file, and it was confirmed. I communicated with the department of labor on all these instances, and they should be in the file." Johnes requested his file from the Division, but it was not provided to him. Significantly, the Division's brief does not contest any of these assertions, nor does it deny its telephone hearing system was not working properly or consistently.

[4] All statutory references are to the Revised Statutes of Missouri (2016), as currently updated by supplement.

competent evidence supports the award, or unless the award is "contrary to the overwhelming weight of the evidence," we do not review the evidence in the light most favorable to the award; rather, we "objectively review the entire record, including evidence and inferences drawn therefrom that are contrary to, or inconsistent with, the Commission's award." *Johnson v. Div. of Emp't Sec.*, 318 S.W.3d 797, 800 (Mo. App. W.D. 2010); *Vaughn v. Mo. CVS Pharmacy, LLC*, 635 S.W.3d 378, 381 (Mo. App. E.D. 2021); *Reed v. Div. of Emp't Sec.*, 469 S.W.3d 853, 855 (Mo. App. W.D. 2015).

When one of the issues is whether the Commission erred in refusing to set aside a dismissal due to the claimant's failure to show good cause for missing a telephone hearing, we must determine whether the Commission abused its discretion in so refusing. *Stevenson v. Div. of Emp't Sec.*, 359 S.W.3d 91, 93 (Mo. App. W.D. 2011). "Abuse of discretion is shown where the outcome is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation omitted). "The employment security law is to be liberally construed to accomplish its purpose to promote employment security. . . by providing for the payment of compensation to individuals in respect to their unemployment." *Taylor v. Div. of Emp't Sec.*, 488 S.W.3d 251, 254 (Mo. App. W.D. 2016); Section 288.020.2.

**Analysis**

The Division argues that Johnes's appeal should be dismissed because his amended *pro se* brief does not comply with Rule 84.04.[5] Johnes's first brief filed with this Court

---

[5] "Although [Johnes] appears *pro se*, he is subject to the same procedural rules as parties represented by counsel, including the rules specifying the required contents of appellate briefs." *Hiner v. Hiner*, 573 S.W.3d 732, 734 n.2 (Mo. App. W.D. 2019); *Bey v. Precythe*, 611 S.W.3d 599, 602 n.3 (Mo. App. W.D. 2020).

was struck for noncompliance with Rule 84.04, and he filed an amended brief. "Rule 84.04 specifies the required contents of a brief on appeal." *Bey v. Precythe*, 611 S.W.3d 599, 602 (Mo. App. W.D. 2020). "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Id.* (quoting *Hiner v. Hiner*, 573 S.W.3d 732, 734 (Mo. App. W.D. 2019)). "Rule 84.04 is not merely a rule of technicalities. Instead, it serves several necessary functions. Importantly, compliance with Rule 84.04 ensures that the opposing party is adequately informed of the precise matters in contention and informs this Court of the issues for review." *Freeland v. Div. of Emp't Sec.*, 647 S.W.3d 22, 24 (Mo. App. W.D. 2022) (internal quotations omitted). "This permits this Court to conduct a meaningful review of the issues before it and ensures that opposing positions will have adequate representation, which is essential to our adversary system." *Id.* However, "[i]t is with great hesitation that we dismiss an appellant's brief for failure to comply with Rule 84.04. Our preference is to decide an appeal on the merits where disposition is not hampered by rule violations and the argument is readily understandable." *Id.* (internal quotations omitted). "[W]hen the deficiencies affect our ability to understand and adequately address the claims of error, the brief preserves nothing for review." *Id.* We are able to understand Johnes's claims of error, and he has provided both legal citations and citations to the record to support his claims, so we will review his claims *ex gratia*. Because of our ruling on the procedural issues, his second and third points, we do not reach his first point, which is that the Commission erred in its ruling on the merits of his claim.

For ease of analysis we address the points relied on in reverse order.

7

Johnes's third point on appeal is essentially that the Commission erred in finding that he lacked good cause for failing to attend the various telephone hearings regarding his claim, as the many procedural problems he incurred were the responsibility of the Division and he made affirmative efforts to appear at his hearings. As is evident in the factual and procedural background section above, this case was mishandled at every turn by the administrative agency. What should have been a straightforward issue (Johnes's employer did not object to his receipt of unemployment benefits, and the Division does not dispute that Johnes never received any temporary total disability benefits pursuant to the Workers Compensation Law) became unnecessarily complicated during the administrative process. The Division first divided his case into two separate matters with separate hearings, scheduled on the same day with the same Referee, and sent Johnes two hearing notices that appeared to be identical but set forth two different times for the hearing. It was only after Johnes realized that he missed his first hearing at 9:00 a.m. that he scoured the notices to realize that he had not, as it appeared, received two copies of the same notice, but received notice of two separate hearings, each appearing to address the same issue. When Johnes attended the second hearing, at 10:00 a.m., with the same Referee, he attempted to discuss the underlying issues involved, but the Referee would only hear testimony on the amount of FPUC benefits Johnes had received and would not allow Johnes to testify as to his availability to work during the period he had received unemployment benefits or whether he had received benefits under the workers compensation system that would have disqualified him. This process was, at best, unnecessarily confusing. The Division's brief sets forth three separate procedural histories for what started as a single non-contested

8

claim for unemployment benefits. The Division, on its own and without input from any party, determined that Johnes was disqualified from receiving unemployment benefits because he had an "open" workers compensation claim.

As Johnes's difficulties presenting his claim continued with his failed attempts to attend telephone hearings due to the pass codes provided to him by the Division not being accepted, appeals being rescheduled, and appeals being dismissed by the Division prior to the scheduled hearing, his problems logging in were "noted" in his file, and one appeal experienced an "error" in "processing." Johnes appeared ten minutes late for another hearing because it was his first day on a new job (something the Division would be expected to encourage), and he could not get away exactly on time to participate in the hearing. At each turn, Johnes immediately reported his troubles to the Division and attempted to reschedule.

"A claimant's appeal from a deputy's ruling may be dismissed for failure to appear" for the hearing. *Taylor*, 488 S.W.3d at 254. The dismissal will be set aside if "good cause" is found for the claimant missing the hearing. *Id.* "Good cause" is found in "those circumstances in which the party acted in good faith and reasonably under all the circumstances." *Id.* at 254-55. When a claimant has made "affirmative efforts" to attend his hearings, we usually conclude that good cause has been shown; it is generally only when the claimant has made "no attempt" to be present at the hearing that we affirm the Commission's decision that a claimant failed to show good cause. *See, e.g., id.* at 255; *Stevenson*, 359 S.W.3d at 94; *Speed v. Div. of Emp't Sec.*, 402 S.W.3d 153, 155 (Mo. App. W.D. 2013). The Division does not contest or deny the tortured procedural history as set

9

forth in Johnes's brief, nor does it set forth any reasonable argument that he did not make a good faith effort to comply with all of the notices he received or to attend every hearing that was scheduled.[6] On the contrary, Johnes immediately called in to report after each time he could not access the hearing, and either wrote letters to document the situation or spoke to Division employees on the phone regarding his difficulties. He even followed up by phone several days after speaking with a Division employee who confirmed that his attempt to call in to his hearing had been noted in his file. We conclude that Johnes has established good cause for missing the hearings at issue before us and that the Commission abused its discretion in dismissing his appeal for failure to appear. Johnes's third point on appeal is granted.

Johnes's second point on appeal is that the Commission erred in finding that Johnes failed to appeal its January 7, 2022 order until April 5, 2022. After the January 3, 2022

---

[6] The Division's brief disingenuously cites *Walker v. Division of Employment Security*, 592 S.W.3d 384 (Mo. App. W.D. 2020), wherein the claimant was similarly scheduled two separate hearings on the same day and missed one of the hearings, to support its assertion that Johnes lacked good cause. But *Walker* did not decide or analyze the issue of good cause. Instead, *Walker* dismissed the claimant's brief because the claimant did not argue that he had good cause for missing his hearing; he only argued the merits of his claim for unemployment benefits. *Id.* at 388. Thus, the claimant did not challenge the only ruling of the Commission before this Court in his appeal. *Id.* Moreover, unlike in *Walker*, where the issues to be determined in the respective hearings were arguably more easily distinguishable, Johnes's hearing notices appeared nearly identical, with one stating it was to determine the issue: "288.380, RSMo: Is the claimant overpaid benefits because the claimant was paid benefits during a period of disqualification?" and the other stating the issue for the hearing was "288.380, RSMo: Is the claimant overpaid benefits?" We emphasize that the Division's practice of scheduling multiple separate hearings for arguably different issues in relatively simple cases may be confusing for typically unrepresented claimants. Particularly when the legislature has set forth the policy of the employment security provisions, "This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment." Section 288.020.2. "We should not overlook the hardships facing *pro se* claimants as they navigate the daunting and complex apparatus that is the unemployment benefits process, particularly at a time when many claimants were confronting a myriad of other complications tied to the COVID-19 pandemic. In this spirit we encourage the Division to continue to explore and implement policies to assist Claimant and those similarly situated." *Mujakic v. Div. of Emp't Sec.*, ___ S.W.3d ___, 2023 WL 2576641 (Mo. App. E.D. 2023).

telephone hearing that Johnes missed because he called in a few minutes late, he immediately sent a letter explaining that he had been ten minutes late to the hearing because it was the first day on his new job and he could not get away in time to call in to the hearing. The January 7 order found that "the claimant was overpaid $4,480.00 in benefits for the period of January 3, 2021 through May 22, 2021, on a finding that the claimant was paid benefits for a period of disqualification," and that Johnes had failed to attend his January 3 hearing. On February 8, 2022, the Appeals Tribunal of the Division sent Johnes a notice that a request for reconsideration of a previous order of dismissal[7] for failure to participate in a hearing had been processed erroneously and that a new hearing would be scheduled. Another notice, dated February 17, 2022, scheduled a hearing for March 14, 2022, stated that it would determine: "288.040.1(2), RSMo: Was the claimant able to work, available for work, and, if required, actively and earnestly seeking work?"[8] and "8 CSR 10-5.040(2): Good cause for failure to appear at a prior hearing." This notice would appear to a reasonable reader as a rescheduling of the missed January 3, 2022 hearing, thereby voiding the January 7, 2022 order of the Commission, as it purports to provide a hearing to

---

[7] This order of dismissal was for failure to attend the hearing scheduled on December 1, 2021, but the timing of the various rescheduled hearings, notices, orders, and letters further contributes to the confusion as to the meaning of the various decisions and what each successive hearing was intended to address.

[8] In *Mussa v. Division of Employment Security*, 649 S.W.3d 316, 321 (Mo. App. W.D. 2022), we discussed claims for employment benefits not contested by the claimant's employer, and concluded that:

> Section 288.070.5 permits a Division deputy to reconsider a benefits determination "for good cause," and requires the deputy to promptly notify interested parties of the deputy's determination "and the reasons therefore." This indicates that the party seeking reconsideration of the award of benefits, in this case the Division, bears some burden to identify the factual circumstances which purportedly justify reconsideration of a previous benefits determination. Where the basis for the disqualification is misconduct [for example], the burden is on the employer to show that the employee committed misconduct associated with her work.

In this case an "open" workers compensation claim, without more, would have been insufficient to disqualify Johnes from the receipt of unemployment benefits.

determine issues that were already determined in the January 7 order. In Johnes's experience, such dismissals were not final dispositions of his case when another hearing had been scheduled to determine the same issues. We conclude that the February 17 notice of hearing scheduled for March 14, 2022, purportedly to determine the issue central to his claim, vacated the January 7 decision dismissing Johnes's appeal, and we therefore agree with him that the June 7, 2022 order of the Commission, finding that Johnes's April 5 application for review was untimely, was in error. We thus grant Johnes's second point on appeal.

Johnes's first point on appeal addresses the merits of his claim for unemployment benefits and his availability to work during the relevant period. The Commission never heard or considered Johnes's evidence on the merits. Accordingly, and because we find Johnes's second and third points dispositive, we reverse and remand this case to the Commission for a hearing on the merits of whether Johnes was disqualified from the receipt of unemployment benefits based on his worker's compensation claim.

_____
Gary D. Witt, Judge

All concur

12